UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

First Midwest Bank, Guardian of the Estate of Jaden Yarbrough,
a Disabled Minor,

                                    Plaintiff

vs.

Rush University Medical Center
Xavier Pombar, D.O.. , Lisa Jackson, M.D.
Megan T. Hansen, M.D., Danielle Stigger, D.O.
Noelle Shallcross, R.N., Sally Figueras, R.N.    Defendants

**COMPLAINT AT LAW**

      Now comes Plaintiff, First Midwest Bank, Guardian of the Estate of Jaden Yarbrough, by and through its attorneys, Geraci Law, LLC, and complaining of Defendants Rush University Medical Center, Xavier Pombar, D.O., Lisa Jackson, M.D., Megan T. Hansen, M.D., Danielle Stigger, D.O., Noelle Shallcross, R.N. and Sally Figueras, R.N., states:

**A.**   **Preliminary Statement**

      1.     This is an action for damages, suffered during labor and delivery of Jaden Yarbrough, due to professional negligence by the Defendants medical care providers. Plaintiff claims that Defendants failed to monitor and deliver Jaden promptly, and proximately caused him to be deprived of oxygen and suffer permanent brain damage, including spastic quadriplegia and cortical blindness. Jaden, as a result, cannot care for himself. The amount of damages for his injuries, disability, medical costs and future care, and other damages, exceeds $75,000.00. At the time of this suit, he is 11 years old and resides with his mother, a citizen of the State of Indiana, residing in Indianapolis, IN.

B. **Jurisdiction and Venue**

2. This Court has jurisdiction under 28 U.S.C. 1332 (diversity jurisdiction) because the amount sought is in excess of $75,000.00, Jaden and his mother are citizens of Indiana, the Guardian of the Estate is deemed to be a citizen of Indiana, and no defendant is a citizen of Indiana: Rush and the other defendants are citizens of Illinois, except for Jackson who is a citizen of New York, Stiggers who is a citizen of Kentucky, and Hansen who is a citizen of Texas.

3. Venue is proper under 28 U.S.C. 1391 (b) (2) because all of the events or omissions giving rise to the claims occurred in Chicago, Illinois.

C. **The Parties**

4. First Midwest Bank was appointed Guardian of the Estate of Jaden Yarbrough by Order attached as Exhibit A and is authorized by law to bring this cause of action on behalf of Jaden Yarbrough.

5. Jaden Yarbrough is a disabled minor born Jan. 3, 2003.

6. Jonteria Stephens is the mother of Jaden Yarbrough.

7. Rush University Medical Center is the hospital where the events occurred, in Chicago, Illinois.

8. Xavier Pombar, D.O. is a licensed Illinois physician and surgeon who delivered Jaden.

9. Lisa Jackson, M.D., at the time of the events, was a licensed Illinois physician and surgeon who attended Jonteria Stephens during labor and delivery.

10. Megan T. Hansen, M.D., at the time of the events, had a temporary physician's license from the State of Illinois and attended Jonteria Stephens during labor and delivery.

11. Danielle Stigger, D.O., attended Jonteria Stephens during labor and delivery.

12. Noelle Shallcross, R.N. was a nurse employed by Rush who attended Jonteria Stephens during labor and delivery.

13. Sally Figueras, R.N. was a nurse employed by Rush who attended Jonteria Stephens during labor and delivery.

**D. Factual Allegations Common to all Counts**

14. Jonteria Stephens was a patient at the Rush Adolescent Family Clinic of Rush University Medical Center for some time prior to the birth of Jaden on January 3, 2007.

15. Rush University Medical Center selected all of the treatment providers who provided treatment to Jonteria Stephens at all times related to this cause of action.

16. At about 1:00 P.M. on January 2, 2007, Rush University Medical Center employees admitted Jonteria Stephens to its facility in Chicago for the management of labor and expected vaginal delivery of her baby, and assigned Michael Hussey, M.D., as her attending physician.

17. During its process of admitting Jonteria as an impatient for delivery of her child, Rush University Medical Center obtained Jonteria's written consent for "Dr. Hussey and/or staff and/or such assistants and associates as may be selected by him/her/they" to provide treatment to Jonteria Stephens and her fetus, to wit:

> 1. I hereby authorize _Dr Hussey_ and/or _Staff_ and/or such assistants and associates as may be selected by him/her/they to perform the following procedure(s)/treatment(s) upon the patient.
>
> Procedure(s)/Treatment(s) _Admission to hospital, management of labor, Expected vaginal delivery_

18. After it obtained consent for "staff" to provide medical care, Rush assigned physicians, resident medical school graduates with temporary licenses, and registered nurses, to assume the duty of care of Jonteria Stephens and her fetus, including Noelle Shallcross, R.N., and Sally Figueras, R.N.

19. At some time between admitting Jonteria, and the delivery of her child, Rush University Medical Center substituted Xavier Pombar, D. O. instead of Michael Hussey, M.D., in the role of attending physician.

20. Rush University Medical Center assigned Xavier Pombar, D.O., to supervise the Megan Hansen while she cared for Jonteria and her unborn child.

21. Defendant Megan Hansen was an employee of Rush University Medical Center at all times mentioned in this Complaint.

22. Rush University Medical Center assigned Xavier Pombar, D.O., to supervise Lisa Jackson while she cared for Jonteria and her unborn child.

23. Defendant Lisa Jackson was an employee of Rush University Medical Center at all times mentioned in this Complaint.

24. Defendant Danielle Stigger was an either an employee of Rush University Medical Center, or she was assigned by Rush to care for Jonteria and her unborn child, at all times mentioned in this Complaint.

25. Rush University Medical Center assigned Xavier Pombar, D.O., to supervise Danielle Stigger while she cared for Jonteria and her unborn child.

26. Dr. Pombar and all physicians and all nurses who provided labor and delivery care of Jonteria Stephens and her fetus on the Rush premises were either employees, or agents of, or selected by Rush University Medical Center to provide care and treatment to Jonteria and her unborn child, and were acting within the scope of their duties, authority and agency as actual or apparent agents of Rush University Medical Center.

27. Rush University Medical Center controlled or had the right to control the activities, hours, rules, and medical care provided by the defendants on its premises to Jonteria Stephens and her unborn child.

28. Jaden Yarbrough was born on January 3, 2007 at about 3:39 a.m. at Rush University Medical Center, Chicago, Cook County Illinois.

29. On or about January 3, 2007, and at all times relevant herein, Rush University Medical Center, through its physicians, nurses, agents, servants, and employees, and each Defendant, had a duty to possess and apply the knowledge and exercise the care and skill of reasonably well-qualified health care providers and professionals under the same or similar circumstances.

30. After Rush University Medical Center admitted Jonteria Stephens to its facility, one or more of the Defendants breached their duty of care to Jonteria and Jaden by one or more of the acts and omissions specified below.

31. One or more of the acts or omissions specified in the Counts following was a proximate cause of the following injuries and damages to Jaden:

    a. Hypoxic Ischemic Encephalophy caused by various deviations from the standard of care of Jaden during labor, and delay in delivery and deprivation of

oxygen, that resulted in brain damage rendering him spastic, quadriplegic and cortically blind, unable to communicate, and in need of total care by others;

    b. Loss of a normal life;

    c. Disability;

    d. Disfigurement;

    e. Increased risk of harm;

    f. Shortened life expectancy;

    g. Medical expenses;

    h. Lost earnings;

    i. Costs of providing care to him

    j. Other damages

32. Attached to this Complaint is a Certificate of Merit, and an attorney's affidavit executed pursuant to 735 ILCS 5/2-622.

**E. Claim v. Rush University Medical Center (vicarious liability)**

33. Plaintiff restates the allegations of par. 1-32 as though set forth here in full.

34. Rush assigned another physician, Dr. Pombar, to attend to Jonteria and Jaden, in the absence of Dr. Hussey, but

    a. failed to tell Dr. Pombar;

    b. failed to staff the labor and delivery ward with competent personnel;

    c. failed to replace Dr. Pombar when he became occupied with the delivery of twins; and was unavailable to supervise the labor of Jonteria.

After Rush appointed Pombar to attend to Jonteria, Pombar

    d.   failed to order terbutaline in the face of tachysystole and repetitive fetal heart rate decelerations during the second stage;

    e.   Failed to supervise the resident medical graduates employed by Rush;

    f.   Failed have Ms. Stephens stop pushing in order to see if the fetus would recover;

    g.   Failed to proceed with delivery

    h.   Failed to appreciate the effects of excessive uterine activity on the fetus which in this case led to fetal hypoxia and neurologic injury.

    i.   Failed to promptly appreciate fetal compromise and to take the necessary steps to resuscitate and/or to effect earlier delivery of the fetus

35. Defendant Lisa Jackson breached the standard of care while employed by Rush in the management of the labor and delivery of Jonteria Stephens in one or more of the following ways:

    a.   Failed to supervise the fetal heart rate;

    b.   Failed to supervise the progress of pushing that Defendant Hansen was doing;

    c.   Failed to notify the attending physician of minimal variability;

    d.   Failed to have the attending physician physically evaluate the patient and the fetal heart rate tracing, in order to determine that it is safe to continue laboring and pushing;

    e.   Failed to expedite delivery;

    f.   Otherwise mismanaged the medical care during labor and delivery.

36. Defendant Megan Hansen breached the standard of care while employed by Rush in the management of the labor and delivery of Jonteria Stephens in one or more of the following ways:

    a. Failed to recognize a pattern of tachysystole that started at 9:15 P.M.;

    b. Failed discontinue Pitocin and treat tachysystole once the fetal heart pattern began to decompensate and show a non-reassuring fetal hear rate pattern;

    c. Failed to call the senior residents and attending physicians to evaluate, expedite and supervise the delivery

    d. Otherwise mismanaged the medical care during labor and delivery.

37. Defendant Danielle Stigger was employed by Rush in the management of the labor and delivery of Jonteria Stephens.

38. Defendant Danielle Stigger breached the standard of care in one or more of the following ways:

    a. Failed to ensure proper use of Pitocin;

    b. Failed to manage the tachysystole;

    c. Failed to supervise the management of the fetal heart rate by the resident physicians;

    d. Failed to examine the patient and expedite delivery;

    e. Otherwise mismanaged the medical care during labor and delivery.

39. Defendant Shallcroft was employed by Rush as a nurse in the management of the labor and delivery of Jonteria Stephens

40. Defendant Shallcroft breached the standard of care while in one or more of the following ways:

a. Failed to request that a senior resident and Dr. Pombar, the attending faculty physician, come to Ms. Stephens's room, and assess the maternal status and the FHR pattern at

  i. 1943 hrs. on Jan. 2, 2007, when the first year resident, Dr. Hansen, attached the fetal scalp electrode in response to a prolonged FHR deceleration

  ii. 2005 hrs. on Jan. 2, 2007 when the first year resident, Dr. Hansen, inserted the intrauterine pressure catheter

b. Failed to decrease the Pitocin infusion by 2130 hrs. on Jan. 2, 2007 with persistent tachysystole and notify the senior resident and Dr. Pombar, the attending faculty physician

c. Failed to discontinue the Pitocin infusion at 2139 hrs. on Jan. 2, 2007 in response to ongoing tachysystole and a deep variable deceleration (FHR 30 bpm at the nadir of the deceleration)

d. Failed to notify and summon the senior resident and Dr. Pombar at 2139 hrs. on Jan. 2, 2007 in response to the deteriorating Category II FHR pattern and ongoing tachysystole.

e. The failure to discontinue the Pitocin infusion and to notify and summon the senior resident and attending faculty physician remained an ongoing breach in the standard of care.

f. Failed to know, as all labor and delivery nurses know, or should know, that a first year resident is not qualified to manage a high-risk laboring patient without direct supervision by a senior resident and Dr. Pombar.

    g. Failed to timely implement full intrauterine fetal resuscitation measures in the face of a deteriorating FHR pattern

    h. Failed to recognize that the IUPC was incorrectly recalibrated at 2334 hrs. on Jan. 2, 2007 based on the drop in the contraction resting tone to the zero line and below the zero line

    i. Failed to request that the charge nurse or a physician assist with proper recalibration of the IUPC

    j. Failed to again request that Dr. Pombar come to Ms. Stephens's room to personally assess the maternal and fetal status, explain the change in the FHR patterns and fetal status and discuss treatment options for the ongoing variable decelerations

    k. Otherwise breached the standard of care.

41. Defendant Figueras was employed by Rush as a nurse in the management of the labor and delivery of Jonteria Stephens.

42. Defendant Figueras breached the standard of care in one or more of the following ways:

    a. Failed to promptly summon the senior resident and Dr. Pombar and review the entire FHR and contraction pattern

    b. Failed to request an order for Terbutaline, a uterine relaxant

    c. Failed to discontinue the amnioinfusion and request that the physicians perform an ultrasound to determine the amount of retained infusate in the uterus

    d. Failed to serve as a patient advocate, uphold Rush University Hospital's Patient Bill of Rights and ensure that there was a timely team conference

>   with the charge nurse, the senior resident and Dr. Pombar, regarding the options for delivery
>
> e. Failed to direct Ms. Stephens to stop pushing in the face of a rapidly deteriorating FHR pattern (prolonged decelerations, fetal tachycardia, and absent variability) and advocate for a timely delivery
>
> f. Failed engage the assistance of the charge nurse to ensure a timely delivery of the infant
>
> g. Failed to use effective "escalation of concerns" methods to obtain appropriate medical evaluation of Ms. Stephens
>
> h. Otherwise breached the standard of care.

43. One or more of the foregoing acts or omissions by one or more of the employees or agents of Rush University Medical Center was a proximate cause of injuries and damages to Jaden Yarbrough.

44. Wherefore, Plaintiff prays for judgment, plus costs, against this Defendant.

**F.   Claim v. Rush University and Medical Center (direct liability)**

45. Rush University Hospital failed to ensure, either through appropriate processes of education, and/ or training, and / or performance evaluation that the labor nurses:

> a. complied with evidence-based practices related to Pitocin administration Amnioinfusion administration and pushing efforts during the second stage of labor
>
> b. timely recognized tachysystole and other types of excessive uterine activity and promptly treated the abnormal contraction patterns

  c.  timely implemented full intrauterine fetal resuscitation measures

  d.  served as patient advocates and upheld the hospital's Patient Bill of Rights

  e.  complied with hospital policies and procedures, the Conditions of Participation for Hospitals in Medicare and The Joint Commission Accreditation Standards

  f.  understood the limitation in a first year resident's scope of practice

  g.  actively communicated with senior residents and the attending faculty physician regarding changes in the maternal and fetal status using a SBAR technique or another effective form of communication

  h.  were competent in "escalation of concerns" communication techniques and recognized situations that required prompt delivery of the infant

46. Rush University Medical Center Failed to properly train and supervise the physicians it was training under the residency program, or to staff and supervise its attending physicians.

47. One or more of the foregoing breaches of the standard of care was a proximate cause of injury and damage to Jaden Yarbrough.

48. Wherefore, Plaintiff prays for entry of judgment against this Defendant, plus the costs of this suit.

**G. Claim v. Xavier Pombar, M.D. (professional negligence)**

49. Plaintiff restates the allegations of par. 1-32 as though set forth here in full

50. Defendant Pombar breached the standard of care, after Rush assigned him, in place of Dr. Hussey, to attend to the management of the labor and delivery of Jonteria Stephens in one or more of the following ways:

    a.    failed to order terbutaline in the face of tachysystole and repetitive fetal heart rate decelerations during the second stage,

    b.    Failed to supervise the residents;

    c.    Failed have Ms. Stephens stop pushing in order to see if the fetus would recover;

    d.    Failed to proceed with delivery;

    e.    Otherwise breached the standard of care.

51. One or more of the foregoing acts or omissions was a proximate cause of injuries and damages to Jaden Yarbrough.

52. Wherefore, Plaintiff prays for judgment, plus costs, against this Defendant.

## H. Claim v. Lisa Jackson, M.D. (professional negligence)

53. Plaintiff restates the allegations of par. 1-32 as though set forth here in full

54. Defendant Lisa Jackson was employed by Rush in the management of the labor and delivery of Jonteria Stephens

55. Defendant Lisa Jackson breached the standard of care while in one or more of the following ways:

    a.    Failed to supervise the fetal heart rate

    b.    Failed to supervise the progress of pushing that Defendant Hansen was doing;

    c.    Failed to notify the attending physician of minimal variability;

      d.    Failed to have the attending physician physically evaluate the patient and the fetal heart rate tracing, in order to determine that it is safe to continue laboring and pushing.

      e.    Failed to expedite delivery;

      f.    Otherwise mismanaged the medical care during labor and delivery

56.    One or more of the foregoing acts or omissions was a proximate cause of injuries and damages to Jaden Yarbrough.

57.    Wherefore, Plaintiff prays for judgment, plus costs, against this Defendant.

**I.**    **Claim v. Megan T. Hansen, M.D. (professional negligence)**

58.    Plaintiff restates the allegations of par. 1-32 as though set forth here in full

59.    Defendant Megan Hansen breached the standard of care while employed by Rush in the management of the labor and delivery of Jonteria Stephens in one or more of the following ways:

      a.    Failed to recognize a pattern of tachysystole that started at 9:15 p.m. Jan. 2;

      b.    Failed discontinue Pitocin and treat tachysystole once the fetal heart pattern began to decompensate and show a non-reassuring fetal hear rate pattern;

      c.    Failed to call the senior residents and attending physicians to evaluate, expedite and supervise the delivery

      d.    Otherwise mismanaged the medical care during labor and delivery.

60.    One or more of the foregoing acts or omissions was a proximate cause of injuries and damages to Jaden Yarbrough.

61.    Wherefore, Plaintiff prays for judgment, plus costs, against this Defendant.

**J.      Claim v. Danielle Stigger, D.O. (professional negligence)**

62.     Plaintiff restates the allegations of par. 1-32 as though set forth here in full.

63.     Defendant Danielle Stigger breached the standard of care while employed by Rush in the management of the labor and delivery of Jonteria Stephens in one or more of the following ways:

   a. Failed to ensure proper use of Pitocin;

   b. Failed to manage the tachysystole;

   c. Failed to supervise the management of the fetal heart rate by the resident physicians;

   d. Failed to examine the patient and expedite delivery;

   e. Otherwise mismanaged the medical care during labor and delivery.

64.     One or more of the foregoing acts or omissions was a proximate cause of injuries and damages to Jaden Yarbrough.

65.     Wherefore, Plaintiff prays for judgment, plus costs, against this Defendant.

**K.      Claim v. Noelle Shallcross, R.N. (professional negligence)**

66. Plaintiff restates the allegations of par. 1-32 as though set forth here in full

67.     Defendant Shallcross was while employed by Rush in the management of the labor and delivery of Jonteria Stephens

68.     Defendant Shallcross breached the standard of care in one or more of the following ways:

   a.      Failed to serve as a patient advocate and uphold Rush University Hospital's Patient Bill of Rights

b. Failed to advocate for the active involvement of the senior resident and the attending faculty physician including assessment of the maternal-fetal status

c. Failed to ensure that there was an informed decision-making discussion between Ms. Stephens and the senior resident and attending faculty physician in compliance with the Conditions of Participation for Hospitals in Medicare and The Joint Commission Accreditation Standards

d. Failed to use effective "escalation of concerns" methods to obtain appropriate medical evaluation of Ms. Stephens

e. Failed to assess and document the amount of amnioinfusion fluid (infusate) leaking from the vagina

f. Failed to discontinue the amnioinfusion when Ms. Stephens began to push and request that the physicians perform an ultrasound to determine the amount of retained infusate in the uterus

g. Failed to appropriately coach Ms. Stephens in safe pushing efforts during second stage labor based on AWHONN evidence-based practice guidelines

h. Failed to summon Dr. Pombar, the attending faculty physician again at 0148 hrs. Jan. 3, when there was a five minute long tetanic contraction and associated prolonged FHR deceleration

i. Failed to request an order to administer Terbutaline, a uterine relaxant to correct the pattern of uterine tachysystole and tetanic contractions

j. Failed to timely recognize, treat and report the recurrent late decelerations

  k. Failed to recognize the association between the deterioration in the fetal status (recurrent late decelerations and rapidly decreasing FHR variability) and the excessive uterine activity and closed-glottis pushing

  l. Failed to revise the original, written Nursing Care Plan to reflect significant changes in the nursing plan;

  m. Failed to request that a senior resident and Dr. Pombar, the attending faculty physician, come to Ms. Stephens's room, and assess the maternal status and the FHR pattern at 1943 hrs. Jan. 2 when the first year resident, Dr. Hansen, attached the fetal scalp electrode in response to a prolonged FHR deceleration and at 2005 hrs. when the first year resident, Dr. Hansen, inserted the intrauterine pressure catheter

  n. Failed to decrease the Pitocin infusion by 2130 hrs. Jan. 2 with persistent tachysystole and notify the senior resident and Dr. Pombar, the attending faculty physician

  o. Failed to discontinue the Pitocin infusion at 2139 hrs. Jan. 2 in response to ongoing tachysystole and a deep variable deceleration (FHR 30 bpm at the nadir of the deceleration)

  p. Failed to notify and summon the senior resident and Dr. Pombar at 2139 hrs. Jan. 2 in response to the deteriorating Category II FHR pattern and ongoing tachysystole. The failure to discontinue the Pitocin infusion and to notify and summon the senior resident and attending faculty physician remained an ongoing breach in the standard of care. All labor and delivery nurses know, or

should know, that a first year resident is not qualified to manage a high-risk laboring patient without direct supervision by a senior resident and Dr. Pombar.

q. Failed to timely implement full intrauterine fetal resuscitation measures in the face of a deteriorating FHR pattern

r. Failed to recognize that the IUPC was incorrectly recalibrated at 2334 hrs. Jan. 2 based on the drop in the contraction resting tone to the zero line and below the zero line

s. Failed to request that the charge nurse or a physician assist with proper recalibration of the IUPC

t. Failed to again request that Dr. Pombar come to Ms. Stephens's room to personally assess the maternal and fetal status, explain the change in the FHR patterns and fetal status and discuss treatment options for the ongoing variable decelerations

u. Otherwise breached the standard of care.

49. One or more of the foregoing acts or omissions was a proximate cause of injuries and damages to Jaden Yarbrough.

50. Wherefore, Plaintiff prays for judgment, plus costs, against this Defendant.

**L.     Claim v. Sally Figueras, R.N. (professional negligence)**

51. Plaintiff restates the allegations of par. 1-32 as though set forth here in full

52. Defendant Figueras was employed by Rush in the management of the labor and delivery of Jonteria Stephens

53. Defendant Figueras breached the standard of care in one or more of the following ways:

    a. Failed to promptly summon the senior resident and Dr. Pombar and review the entire FHR and contraction pattern

    b. Failed to request an order for Terbutaline, a uterine relaxant

    c. Failed to discontinue the amnioinfusion and request that the physicians perform an ultrasound to determine the amount of retained infusate in the uterus

    d. Failed to serve as a patient advocate, uphold Rush University Hospital's Patient Bill of Rights and ensure that there was a timely team conference with the charge nurse, the senior resident and Dr. Pombar, regarding the options for delivery

    e. Failed to direct Ms. Stephens to stop pushing in the face of a rapidly deteriorating FHR pattern (prolonged decelerations, fetal tachycardia, and absent variability) and advocate for a timely delivery

    f. Failed engage the assistance of the charge nurse to ensure a timely delivery of the infant

    g. Failed to use effective "escalation of concerns" methods to obtain appropriate medical evaluation of Ms. Stephens

    h. Failed to ensure that a neonatologist or pediatrician was present before the delivery of the infant

    i. Otherwise breached the standard of care.

54. One or more of the foregoing acts or omissions was a proximate cause of injuries and damages to Jaden Yarbrough.

55. Wherefore, Plaintiff prays for judgment, plus costs, against this Defendant

56. Attached to this Complaint is a Certificate of Merit, and an attorney's affidavit executed pursuant to 735 ILCS 5/2-622.

_____

/s/Peter Francis Geraci   pgeraci@geracilaw.com
Jonathan Parker   par@geracilaw.com
Ashley Chike   chk@geracilaw.com

Geraci Law LLC
55 E Monroe St. #3400
Chicago IL 60603-5710
312-739-2169