IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRST MIDWEST BANK, Guardian of the Estate of Jaden Yarbrough, a disabled minor, | ) ) ) | |
| Plaintiff, | ) ) ) | No. 18 C 2382 |
| v. | ) ) | Judge Ronald A. Guzmán |
| RUSH UNIVERSITY MEDICAL CENTER, XAVIER POMBAR, D.O., LISA JACKSON, M.D., MEGAN T. HANSEN, M.D., DANIELLE STIGGER, D.O., NOELLE SHALCROSS, R.N., and SALLY FIGUERAS, R.N., | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are three pretrial motions regarding defendants' expert witnesses. For the reasons explained below, plaintiff's motions to strike the disclosures and exclude testimony of defendants' experts James W. Collins Jr., M.D. and Daniel K. Benjamin, M.D.; to exclude testimony of defense genetics expert Ian Krantz, M.D.; and to bar opinions of defendants' expert witness Mark S. Scher, M.D. are denied.

**A.    Motion to Exclude the Testimony of Drs. Collins and Benjamin**

This is an action for medical negligence in relation to the birth of Jaden Yarbrough ("Jaden"). Plaintiff alleges that the defendant medical providers failed to monitor and deliver Jaden properly, causing him to experience hypoxia (a deprivation of oxygen) and suffer permanent brain damage. Defendants deny any negligence, and they advance two alternative theories of causation: (1) an infection that Jaden's mother had while Jaden was *in utero* was transmitted to Jaden and led to his brain injury; and/or (2) a genetic abnormality caused or contributed to his condition. (ECF No. 100, Defs.' Resp. Pl.'s Mot. Exclude Dr. Krantz's Testimony at 1.)

Plaintiff asks the Court to strike the written reports and exclude the testimony of Drs. James W. Collins Jr. and Daniel K. Benjamin, pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), which states that a party's disclosure of a retained expert must be accompanied by a written report that is "prepared and signed by the witness," and Federal Rule of Civil Procedure 37(c)(1), which provides that if a party fails to provide information or identify a witness as required by Rule 26(a), the party is not allowed to use that information or witness to supply evidence, unless the failure was substantially justified or is harmless.

Dr. Collins is a neonatologist, and Dr. Benjamin is a pediatric infectious-disease specialist. Plaintiff deposed both experts. Dr. Collins stated at his deposition that defense counsel "wrote the report" and that Dr. Collins "edited it." (ECF No. 92, Dep. of James Collins, M.D., at 74.) Dr. Benjamin stated at his deposition that he had a "lengthy conversation" with defense counsel beforehand but "did not author" his report, and that he "would have reviewed it" and did not remember whether he had then made any changes. (ECF No. 93, Dep. of Daniel Benjamin, M.D., at 30, 35.) Plaintiff notes that Dr. Benjamin's report has "an eighty-two percent concordance" with that of Dr. Collins, and contends that the reports do not comply with Rule 26 because they were not "prepared" by the experts but rather ghostwritten by counsel, and, as a result, the experts disclosed opinions they do not actually hold. (ECF No. 79, Pl.'s Mot. Strike as to Drs. Collins & Benjamin at 3-4, 6.)

The Advisory Committee Notes to the 1993 amendments to Rule 26 state that the Rule "does not preclude counsel from providing assistance to experts in preparing the reports" and that "the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and [] must be signed by the witness." Fed. R. Civ. P. 26(a), 1993 advisory committee's note. "The purpose of the report is to provide adequate notice of the substance of the expert's forthcoming testimony and to give the opposing party time to prepare for a response." *Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 734 (7th Cir. 2010).

The Court is not troubled by the extent of overlap between the experts' reports, because the bulk of it is due to the identical list of materials provided to the experts, along with a recitation of the medical history and facts pertaining to Jaden's birth. What is more important is that Drs. Collins and Benjamin stated that they reviewed their reports before signing them; plaintiff's counsel was able to depose them at length about their opinions; and, for the most part, their deposition testimony did not deviate from their respective reports. To the extent that it did, counsel will be able to cross-examine the experts at trial about the deviations. While there is no dispute that counsel drafted the experts' reports, there is also no indication that the experts were not sufficiently involved in their preparation such that the reports may not be fairly considered as setting forth their own opinions. *See Isom v. Howmedica, Inc.*, No. 00 C 5872, 2002 WL 1052030, at *1 (N.D. Ill. May 22, 2002) ("We reject a formalistic approach which would require that the expert be the person who actually puts pen to paper (or fingers to keyboard)."). The reports of Drs. Collins and Benjamin comply with Rule 26; they provided plaintiff with adequate notice of the experts' opinions and forthcoming testimony so that the experts could be effectively deposed and can be effectively cross-examined and confronted with contrary expert opinions.

Even if the circumstances could be considered as one of the rare instances in which the expert reports "cross[] the line separating permissible assistance from improper participation," *Johnson v. City of Rockford*, No. 15 C 50064, 2018 WL 1508482, at *4 n.1 (N.D. Ill. Mar. 27, 2018), any Rule 26 violation was harmless. Plaintiff argues that it is prejudiced because it is "in the precarious position of having two experts with nearly identical expert reports" and it "will be forced to anticipate the testimony of these two." (Pl.'s Mot. Strike at 9.) The Court does not agree. There is nothing unfairly prejudicial about the fact that defendants plan to present the testimony of two experts who hold medical opinions, based on the same facts, that differ from that of plaintiff's expert or experts. And there is no surprise here; plaintiff, having deposed the

2

experts at length, is well aware of their opinions. *See Hoskins v. Gunn Trucking*, No. 4:07-CV-72-WCL, 2009 WL 2970399, at *5 (N.D. Ind. Sept. 14, 2009) (holding that, to the extent counsel's drafting a report for an expert violated Rule 26, any violation was harmless, explaining that "the report fulfilled its purpose of informing Defendants of both the substance of the testimony expected to be given by [the expert witness] on direct examination, and the reasons for the testimony. Defendants will not be surprised or unable to adequately prepare for [the expert's] testimony, and any trial, yet to be scheduled, will not be disrupted.").

Accordingly, plaintiff's motion to strike the reports of Drs. Collins and Benjamin and to exclude their testimony is denied.

**B.    Motion to Exclude the Testimony of Dr. Krantz**

Plaintiff also moves to exclude any testimony of Dr. Ian Krantz, under Federal Rules of Evidence 702, 401, 402, and 403, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Dr. Krantz is a pediatric geneticist who notes that Jaden has a "constellation" of physical and developmental findings, including cerebral palsy, cystic encephalomalacia,[1] other structural differences in his brain, epilepsy, congenital heart defects, growth differences, dysmorphic features (including microcephaly, bitemporal narrowing, and a prominent pointed chin), and significant developmental delays. (ECF No. 100-6, Dep. of Ian Krantz, M.D., at 19-21; ECF No. 83-1, R. 26 Report of Dr. Krantz at 5, 8-9.) Dr. Krantz opines that, while he cannot rule out that Jaden's conditions could have been caused in part by a hypoxic injury at birth, the constellation of Jaden's features is most consistent with a developmental disorder that occurred early in embryonic development, with a likely-genetic cause. (Krantz Dep. at 112-13.) According to Dr. Krantz, a birth-related injury cannot explain all of Jaden's features, and the lack of a specific genetic finding in Jaden's testing to date does not rule out a genetic cause of his features.

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert*." *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). "Under this framework, courts determine whether the expert testimony is both relevant and reliable." *Id.* The witness must have the requisite knowledge, skill, experience, training, or education; the reasoning or methodology underlying his testimony must be scientifically reliable; and the testimony must assist the trier of fact to understand the evidence or determine a fact in issue. *Id.* An expert's testimony is reliable only if "there [is] a link between the facts or data [he] has worked with and the conclusion [his] testimony is intended to support." *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003).

Plaintiff does not take issue with Dr. Krantz's qualifications to reach his conclusions. Rather, plaintiff argues that Dr. Krantz's opinions are the product of "speculation, not reliable principles and methods." (ECF No. 83, Pl.'s Mot. Exclude Dr. Krantz's Testimony at 4.) Plaintiff says that "[r]eliable principles and methods have excluded genetics from the case"; that

---

[1]    Encephalomalacia is the softening of the brain. Merriam-Webster Medical Dictionary, https://merriam-webster.com/medical/encephalomalacia (visited July 24, 2020).

3

Jaden has already been tested with two types of genetic testing—whole exome sequencing and an SNP microarray; and that "[t]here are no other reliable principals [sic] and methods to exclude a human genetic defect." (*Id.*) Plaintiff also characterizes Dr. Krantz's opinion as "basically" that "Jaden looks like he has a pointy chin, so there is some genetic reason for that," and notes that "celebrities with pointy chins do not have brain damage." (*Id.* at 1.) According to plaintiff, Dr. Krantz bases his opinions on "data he doesn't know," (*id.* at 6), and his analysis is missing a "necessary step" because he fails to explain "how a pointy chin causes multi-cystic encephalomalacia," (ECF No. 103, Pl.'s Reply at 6).

The Court agrees with defendants that "plaintiff has oversimplified and misrepresented Dr. Krantz's opinions." (Defs.' Resp. Pl.'s Mot. Exclude Dr. Krantz's Testimony at 4.) Plaintiff relies on a number of false premises, among them that Jaden's dysmorphic features (which plaintiff incorrectly reduces to a "pointy chin") are the sole basis for Dr. Krantz's conclusions; that Jaden's dysmorphic features are "the cause" of Jaden's brain injuries; and that Dr. Krantz "admits genetics did not cause Jaden's brain damage, spastic quadriplegia, or cortical blindness." (Pl.'s Mot. Exclude Dr. Krantz's Testimony at 1.) Plaintiff overlooks that Dr. Krantz bases his opinions not on one or two medical findings in isolation, but on Jaden's unique "constellation" of a host of findings, including developmental abnormalities present in Jaden's brain and heart.[2] Plaintiff's contention that "[t]here is no reason to have any evidence about genetics, since Dr. Krantz admits he can't ID any genetic cause for Jaden's brain damage," (*id.* at 4), misses the mark. Dr. Krantz's opinions are more complex than plaintiff indicates. Dr. Krantz opines that, even though the two kinds of genetic tests performed thus far do not reveal a particular genetic cause for Jaden's condition, a genetic cause for Jaden's constellation of conditions cannot be ruled out, because the genetic testing is not complete (for instance, mitochondrial gene sequencing was not performed, and Jaden's father was not tested), and the state of currently-available genetic testing is such that many genetic abnormalities cannot be identified.

Plaintiff also faults Dr. Krantz for "missing the entire factual history of labor and delivery," (Pl.'s Reply at 1), evidently because it is not specifically recited in his report. But Dr. Krantz reviewed Jaden's medical records and provided a brief birth history in his report. (R. 26 Report of Dr. Krantz at 4.) Rule 705 provides that an expert "may state an opinion—and give the reasons for it—without first testifying to the underlying facts or data." Fed. R. Evid. 705. "Disclosure of the underlying facts or data may be left to cross-examination . . . ." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012).

---

[2] An example of plaintiff's faulty reasoning in this regard is as follows. Likening Dr. Krantz to a "confused scientist" in a cartoon, plaintiff asserts that "[t]here is not a person alive that does not have some kind of feature of the type [Dr. Krantz] points out: birthmark, small head (take a look at any high fashion model), big head (most actors have huge heads, the camera likes that), birthmarks, jug ears, wide set eyes, heart murmurs, inherited predisposition to diabetes." (Pl.'s Reply at 6-7.) This quotation is also illustrative of the uncivil tone of plaintiff's briefs. In the future, the Court expects plaintiff's counsel to refrain from resorting to histrionic and *ad hominem* rhetoric.

Dr. Krantz's testimony is undoubtedly relevant to the primary issue in this case—the cause of Jaden's medical conditions. As defendant correctly points out, the fact that plaintiff's experts disagree with Dr. Krantz's conclusions does not render those conclusions irrelevant. The Court further finds that Dr. Krantz's conclusions are reliable. Dr. Krantz possesses sufficient qualifications for his opinions. He has practiced for 25 years as a pediatric geneticist at Children's Hospital of Philadelphia, where he is the Director of the Individualized Medical Genetics Center. Dr. Krantz is also a full professor of pediatrics at the Perelman School of Medicine at the University of Pennsylvania. He has a number of specialty board certifications in genetics and pediatrics and is affiliated with multiple national and international professional societies. Dr. Krantz sits on the editorial board of the American Journal of Medical Genetics and has authored dozens of peer-reviewed articles on topics pertaining to pediatric genetics. (ECF No. 100-7, Curriculum Vitae of Ian D. Krantz, M.D.) Dr. Krantz's conclusions are based on his substantial training and experience; his consideration of peer-reviewed literature and certain deposition testimony; Jaden's medical records (including the results of genetic testing) and school records; and photographs and videotapes of Jaden. Dr. Krantz's opinions are therefore based on sufficiently reliable methodology. *See, e.g.*, *Hall v. Flannery*, 840 F.3d 922, 928 (7th Cir. 2016) (holding that a medical expert's opinions were reliable where they were based on the expert's review of an autopsy report, medical records, and deposition testimony, and where the expert relied on his substantial and relevant medical experience); *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) ("An expert's testimony is not unreliable simply because it is founded on his experience rather than on data."). Plaintiff's disagreement with Dr. Krantz's conclusions is no reason to exclude Dr. Krantz's testimony. Furthermore, there is no indication that a jury will be confused or misled by Dr. Krantz's testimony or that the testimony will waste time or cause plaintiff any unfair prejudice.

Plaintiff's motion to exclude Dr. Krantz's testimony is denied.

**C.     Motion to Bar Opinions of Dr. Scher**

Plaintiff also moves for the exclusion of any testimony by Dr. Mark Scher relating to "placenta, FIR [fetal inflammatory response], and brain infection"; "meningitis and white blood cells, and nucleated red blood cells, and 'tone'"; and "placental disease and meconium" under Federal Rules of Evidence 702 and 403, as well as *Daubert*. (ECF No. 94, Pl.'s Mot. Bar Dr. Scher's Testimony at 1-9.) Dr. Scher is a pediatric neurologist whose opinions pertain to the cause and timing of Jaden's neurological condition; Dr. Scher opines that Jaden's condition resulted from the transmission of a methicillin-resistant staphylococcus aureus ("MRSA") infection that Jaden's mother had when Jaden was in utero, leading to FIR, meningitis, and a resulting brain injury. (ECF No. 94-1, R. 26 Report of Dr. Scher at 9-14.)

Plaintiff argues that "[n]o one is attacking [Dr. Scher's] qualifications in the general field of pediatric neurology. . . . [b]ut he has no clue about placental pathology . . . . That is, perhaps, why he makes up so much of the facts he bases his opinion on." (ECF No. 104, Pl.'s Reply at 1.) Plaintiff asserts that many of Dr. Scher's opinions "relate to the placenta" and are "mumbo jumbo," and that Dr. Scher "bases his opinions on false assumptions, dubious citations, incorrect science, and outright falsehoods." (Pl.'s Mot. Bar Dr. Scher's Testimony at 1, 14.)

5

The Court is unpersuaded. Under *Daubert*, the proper focus is "solely on [experts'] principles and methodology, not on the conclusions that they generate." *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 434 (7th Cir. 2013) (citing *Daubert*, 509 U.S. at 595). The bulk of plaintiff's motion, however, is devoted to dissecting and assailing Dr. Scher's conclusions. Plaintiff's arguments are nearly incomprehensible; they are riddled with *non sequiturs* and conclusory, unsupported assertions.[3] Plaintiff mischaracterizes Dr. Scher's opinions by failing to consider them in their entirety and offering deposition excerpts taken out of context.

The Court finds that Dr. Scher possesses sufficient qualifications for the opinions he provides here. Dr. Scher is a board-certified pediatric neurologist who has practiced in his area of specialty for 37 years. From 1997 to 2017, he was the Chief of Pediatric Neurology, the Director of Fetal and Neonatal Neurology Programs, and the Director of the Pediatric Neurological Disorders Center at Rainbow Babies and Children's Hospital in Cleveland, Ohio. Dr. Scher is also a full professor of pediatrics and neurology and the Director of Fetal and Neonatal Neurology Programs at the Case Western Reserve University School of Medicine. He is a member of multiple professional societies, including the Child Neurology Society and the International Society for Developmental Origins of Health and Disease. Dr. Scher sat on the editorial boards of Pediatric Neurology and the Journal of Child Neurology and has authored more than 160 peer-reviewed articles on a variety of topics in his field. (ECF No. 102-2, Curriculum Vitae of Mark Steven Scher, M.D.)

Contrary to plaintiff's assertions, Dr. Scher's opinions are not based primarily on the placenta; the placenta is just one factor. As Dr. Scher testified at his deposition and as is evident from his report and testimony, his conclusions are based on the combination of "maternal, placental, fetal, and neonatal facts." (ECF No. 102-3, Dep. of Mark Scher, M.D., at 15.) Dr. Scher's conclusions, like Dr. Krantz's conclusions, are based on his substantial training and

---

[3] The following are examples of these bewildering arguments about Dr. Scher's conclusions:

- "Dr. Scher states 'the placental size is double normal.' Wrong: it is 90th percentile, but that is not 'double normal,' much less 'abnormal': abnormal is 1700 grams, over twice 90th percentile. Jaden's sister's placenta was 90th percentile and no one said hers was 'double normal[.]"
- "Green discoloration on the fetal <u>skin</u>, meconium so old it stained the fetal skin, not meconium on the placenta, is evidence of 'chronic.' Jaden's skin was not stained. Dr. Scher does not explain what chronic is, but he tosses the term around, claiming Jaden's brain damage 'started in November' . . . but he can't tell when the brain damage started or ended."
- "The type of brain damage FIR causes PVL. Jaden does not have PVL. No one says he does. The type of brain damage Jaden has is not caused by infection at 32 weeks that Dr. Scher claims occurred. Damage from FIR at 32-36 weeks causes PVL."

(Pl.'s Mot. Bar Dr. Scher's Testimony at 6, 7, 9.)

experience; his consideration of peer-reviewed literature and deposition testimony; Jaden's medical and school records; and videos of Jaden. And, like Dr. Krantz, Dr. Scher provides supportive reasoning for his conclusions. His opinions are thus based on sufficiently reliable methodology. *See, e.g., Hall*, 840 F.3d at 928. Plaintiff pays only lip service to that methodology. In addition, the Court does not see that any Rule 403 concerns are implicated. Plaintiff's criticisms do not properly go to the admissibility of Dr. Scher's testimony, but to the weight that should be accorded to it, and plaintiff will be able to explore any perceived weaknesses in Dr. Scher's opinions at trial during cross-examination.

## CONCLUSION

Plaintiff's motion to strike the disclosures and exclude testimony of defendants' experts James W. Collins Jr., M.D. and Daniel K. Benjamin, M.D. [79], plaintiff's motion to exclude any testimony of defense genetics expert Ian Krantz, M.D. [83], and plaintiff's motion to bar opinions of defendants' expert witness Mark S. Scher, M.D. [94] are denied.

**DATE:** July 27, 2020

*Ronald A. Guzmán*

**Hon. Ronald A. Guzmán**
**United States District Judge**